**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FULTON COUNTY EMPLOYEES'
RETIREMENT SYSTEM, Derivatively on Behalf
of THE GOLDMAN SACHS GROUP, INC.,

                Plaintiff,

   v.

LLOYD BLANKFEIN, DAVID M. SOLOMON,
M. MICHELE BURNS, MARK A. FLAHERTY,
WILLIAM W. GEORGE, JAMES A.
JOHNSON, ELLEN J. KULLMAN, LAKSHMI
N. MITTAL, ADEBAYO O. OGUNLESI,
PETER OPPENHEIMER, DAVID A. VINIAR,
and MARK O. WINKELMAN,
                Defendants,

 and

THE GOLDMAN SACHS GROUP, INC.,

                Nominal Defendant.

Case No. 1:19-cv-01562 (VSB)

---

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation" or the "Settlement") is made and entered into by and among the following Parties (as defined, *infra*), and by and through their respective counsel: (i) Plaintiff Fulton County Employees' Retirement System ("Plaintiff"); (ii) Lloyd Blankfein, M. Michele Burns, Mark A. Flaherty, William W. George, James A. Johnson, Ellen J. Kullman, Lakshmi N. Mittal, Adebayo O. Ogunlesi, Peter Oppenheimer, David M. Solomon, David A. Viniar, and Mark O. Winkelman (the "Individual Defendants"); and (iii) Nominal Defendant The Goldman Sachs Group, Inc. ("Goldman Sachs" or the "Company," together with the Individual Defendants, the "Defendants," and together with the Plaintiff, the "Parties").

1

Subject to the terms and conditions set forth herein and the approval of the Court pursuant to Federal Rule of Civil Procedure 23.1, the Settlement embodied in this Stipulation is intended: (i) to be in full and final disposition of the Action (as defined, *infra*); (ii) to state all of the terms of the Settlement and the resolution of the Action; and (iii) to fully and finally compromise, resolve, dismiss, discharge and settle each and every one of the Released Claims (as defined, *infra*).

**WHEREAS**:

A.      On February 19, 2019, Plaintiff initiated the above-captioned shareholder derivative action (the "Action") by filing a complaint on behalf of the Company in the United States District Court for the Southern District of New York (the "Court"), asserting claims for breaches of fiduciary duty, violations of sections 10(b) and 14(a) of the Securities Exchange Act of 1934 and under various state law principles.  The claims were predicated on allegations broadly pertaining to 1Malaysia Development Berhad ("1MDB"), a Malaysian sovereign wealth fund (including, without limitation, three bond issuances in 2012 and 2013 underwritten by affiliates of the Company), and were asserted against certain of the Individual Defendants (and two other directors, Drew Faust and Jan Tighe).  As specified in the complaint, some claims were asserted against all the Individual Defendants and some were asserted against a subset thereof.

B.      On May 13, 2019, Defendants filed a motion to dismiss the complaint for failure to make a pre-suit demand on Goldman Sachs' Board of Directors (the "Board") and for failure to state a claim (ECF Nos. 27-28).  Plaintiff did not file a response to Defendants' motion to dismiss; rather, on July 12, 2019, Plaintiff filed an amended complaint (ECF No. 35), which, among other changes, dropped Ms. Faust and Ms. Tighe as defendants, and amplified the allegations raised in its initial pleading.  On September 12, 2019, Defendants filed a motion to dismiss the amended complaint for failure to make a pre-suit demand on the Board and for failure to state a claim (ECF

Nos. 39-40).  That motion was fully briefed as of December 20, 2019.  Plaintiff filed Notices of Supplemental Authority on July 27, 2020 (ECF No. 55) and August 27, 2020 (ECF No. 58).

C.       On or about October 22, 2020, the Company announced that it and certain of its subsidiaries had entered into various agreements to resolve investigations by government authorities in the United States, Malaysia and elsewhere relating to 1MDB (the "1MDB Matters"), including a three-year Deferred Prosecution Agreement ("DPA") with the U.S. Department of Justice ("DOJ").  On the same day, the Board also announced actions it had taken with respect to the compensation of certain current and former Company executives and employees, including clawbacks, forfeitures and compensation reductions.

D.       On November 13, 2020, Plaintiff filed a second amended complaint (the "Complaint") asserting substantially the same claims against the Individual Defendants as had been raised in the prior complaints (ECF Nos. 67-1), but also adding allegations based on the October 2020 DPA and related resolutions.  On January 15, 2021, Defendants again filed a motion to dismiss the Complaint (ECF Nos. 74-75), for failure to make a pre-suit demand and for failure to state a claim.  The Parties completed briefing on the motion to dismiss on May 7, 2021.  Plaintiff filed a Notice of Supplemental Authority on May 14, 2021 (ECF No. 81).

E.       The Parties, assisted by neutral mediators, the Honorable Daniel Weinstein (retired) and Mr. Jed Melnick, Esq. (the "Mediators"), engaged in extensive arm's-length settlement negotiations, including two in-person mediation sessions that took place in Florida on February 2 and 3, 2022, numerous conference calls, and exchanges of mediation statements and other correspondence with the Mediators and each other aimed at reaching an amicable resolution of the Action.  The Insurers (defined, *infra*) also participated in the settlement process.  On February 3, 2022, these mediation efforts culminated in a proposal from the Mediators (the "Proposal") to

resolve the Action, subject to documentation and Court approval, on the following terms: (i) a monetary payment of $79.5 million to be made by the Insurers to Goldman Sachs, which amount (after payment of any attorneys' fees and/or reimbursement of expenses awarded by the Court to Plaintiff and/or Plaintiff Counsel) is to be used for compliance purposes, (ii) certain mutually-agreed upon corporate governance measures, and (iii) full mutual releases, all as further detailed herein. The Parties and the Insurers accepted the Proposal.

F.      Following the Parties' acceptance of the Proposal, Plaintiff Counsel engaged in certain confirmatory discovery, which included access to confidential documents, comprising over 667,523 pages. Plaintiff and Plaintiff Counsel have concluded that the terms and conditions of the Settlement are fair, reasonable and adequate to Goldman Sachs and have agreed to settle the claims asserted in the Action pursuant to the terms and provisions of this Stipulation, after taking into account, among other things: (i) the substantial benefits that the Settlement will provide to Goldman Sachs and its shareholders; (ii) Plaintiff Counsel's investigation of the allegations and claims asserted against the Individual Defendants and review of information from various sources, including substantial confirmatory discovery provided by the Company; (iii) the uncertainty, costs and attendant risks of protracted litigation, especially in complex actions such as this shareholder derivative action, including the existence of legal and factual defenses to Plaintiff's claims; and (iv) the desirability of permitting the Settlement to be consummated without delay as provided by the terms of this Stipulation. Goldman Sachs has acknowledged the substantial benefits conferred on it by the Settlement.

G.      Defendants have agreed to enter into this Settlement solely in order to eliminate the substantial burden, expense, inconvenience and distraction of further protracted litigation, and

make no admission of wrongdoing or liability as to those claims that have, or could have, been asserted against them in the Action by entering into or in connection with this Settlement.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED**, subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23.1, by and among Plaintiff (for itself and derivatively on behalf of Goldman Sachs), by and through its attorneys of record, Defendants, by and through their respective attorneys of record, that in exchange for the good and valuable consideration set forth herein, the Released Claims (as defined, *infra*) shall be fully, finally and forever compromised, settled, released and discontinued, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Stipulation, as follows.

A.      **Definitions**

In addition to the terms otherwise defined herein, and in any Exhibits attached hereto, the following terms shall have the meanings set forth below:

1.      "Action" means the shareholder derivative action, styled *Fulton County Employees' Retirement System v. Blankfein et al.*, No. 1:19-cv-01562 (VSB) (S.D.N.Y.).

2.      "Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether based on state, local, federal, statutory, regulatory, common, or other law or rule, whether asserted or unasserted, known or unknown, accrued or unaccrued, matured or not matured, liquidated or not liquidated, fixed or contingent, including Unknown Claims.

3.      "Defendants" means the Individual Defendants and Nominal Defendant Goldman Sachs.

4.      "Defendants Counsel" means Winston & Strawn LLP.

5.      "Effective Date" means the date on which the Final Judgment and Order of Dismissal are entered in this Action, provided, however, that, as specified in Paragraph G, the Settlement is not conditioned upon the Court's approval of an application by Plaintiff or Plaintiff Counsel for attorneys' fees or the reimbursement of expenses as contemplated herein, and thus the Effective Date may occur irrespective of whether any such application has been or will be granted, whether in whole or in part.

6.      "Final Date" means the date on which the Final Judgment and Order of Dismissal entered in this Action becomes final and no longer subject to appeal or further review (whether as a result of affirmance or of exhaustion of any possible appeal or review, lapse of time or otherwise), provided, however, that, as specified in Paragraph G, the Settlement is not conditioned upon the Court's approval of an application by Plaintiff or Plaintiff Counsel for attorneys' fees or the reimbursement of expenses as contemplated herein, and thus the Final Date may occur irrespective of whether any such application has been or will be granted, whether in whole or in part.

7.      "Final Judgment and Order of Dismissal" means an order entered by the Court, substantially in the form attached hereto as Exhibit D, finally approving the Settlement, and dismissing the Action with prejudice on the merits and without costs to any party except as provided in Paragraph C below.

8.      "Insurers" means those insurance companies who issued directors and officers ("D&O") liability insurance to Goldman Sachs (the "D&O Policies"), and agreed to pay the Monetary Consideration.

9.     "Monetary Consideration" means the payment of $79.5 million by the Insurers to Goldman Sachs as settlement monies in connection with the Settlement contemplated by this Stipulation.

10.     "Notice" means the Notice of Settlement of Shareholder Derivative Litigation and Hearing, substantially in the form attached hereto as Exhibit B.

11.     "Notice Costs" means the costs and expenses incurred in providing notice of the Settlement to Goldman Sachs shareholders.

12.     "Person" means any individual, corporation, professional corporation, limited liability company, partnership, limited partnership, limited-liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives or assignees.

13.     "Plaintiff Counsel" means Saxena White P.A.

14.     "Preliminary Approval Order" means an order entered by the Court, substantially in the form attached hereto as Exhibit A, setting forth the date for a Settlement Hearing on the proposed Settlement, directing notice thereof and preliminarily determining, for purposes of the Settlement only, that the Action is properly maintained by Plaintiff as a shareholder derivative action on behalf of Goldman Sachs.

15.     "Released Claims" means the Released Plaintiff Claims and the Released Defendant Claims.

16.     "Released Defendant Claims" means any Claims that have been or could have been asserted in the Action, or in any other action or proceeding, by Defendants or any of their respective successors, transferees and assigns against any of the Released Plaintiff Parties,

7

which arise out of or relate in any way to the institution, prosecution, settlement or dismissal of the Action. "Released Defendant Claims" shall not include: (i) the right to enforce this Settlement; (ii) any Claims that arise out of or relate in any way to the D&O Policies that any of the Defendants has or may have against any of the Insurers; and (iii) any Claims that the Company (or any affiliate thereof) has or may have against Timothy Leissner or Ng Chong Hwa (also referred to as Roger Ng) including, without limitation, any right to clawback, demand forfeiture of, or reduce compensation arising out of or relating to, their employment by the Company or any direct or indirect affiliate thereof.

17.    "<u>Released Defendant Parties</u>" means, whether or not any or all of the following Persons were named, served with process, or appeared in the Action:  (i) Goldman Sachs; (ii) the Individual Defendants; (iii) any current or former director or officer of the Company or any of its affiliates; (iv) any Person that is or was related to or affiliated or associated with any or all of Defendants or in which any or all of them has or had a controlling interest; and (v) with respect to each of the Persons set forth or described in (i)-(iv), each of their respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, foundations, administrators, beneficiaries, distributees, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, shareholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, transferees, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, financing sources, lenders, commercial bankers, attorneys (including, without limitation, Defendants Counsel),

personal or legal representatives, accountants, tax advisors, insurers, co-insurers, reinsurers and associates.  "Released Defendant Parties" shall not include Messrs. Timothy Leissner, Roger Ng, nor any person who meets the criteria of subparts (iv) or (v) above in respect of Messrs. Leissner or Ng.

18.     "Released Parties" means the Released Plaintiff Parties and the Released Defendant Parties.

19.     "Released Plaintiff Claims" means any and all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, local, statutory, regulatory, common, foreign or other law or rule, that Plaintiff or the Company (i) asserted in the Complaint or (ii) could have asserted, or could hereafter assert against any of the Released Defendant Parties either directly or derivatively on behalf of the Company that in any way are based on, arise from or relate to the allegations, transactions, facts, matters, disclosures or nondisclosures set forth in the Complaint, including but not limited to the conduct, actions, inactions, deliberations, statements or representations of any Released Defendant Party.  For the avoidance of doubt, "Released Plaintiff Claims" shall not include or release:  (i) any claims relating to the right to enforce this Stipulation or Settlement, or (ii) any direct claims of Plaintiff or any other Goldman stockholder, including without limitation any direct claims asserted under the federal securities laws, including without limitation claims asserted in the Second Amended Class Action Complaint, dated October 28, 2019 (ECF No. 63) in *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc. et al.*, No. 1:18-cv-12084-VSB (S.D.N.Y.).

20.     "Released Plaintiff Parties" means Plaintiff, on behalf of itself, its legal representatives, heirs, executors, administrators, estates, predecessors, predecessors-in-interest, successors, successors-in-interest, affiliates, transferees, and assigns, and any Person acting for or

on behalf of, or claiming under, any of them, and each of them, together with each of their respective officers, directors, managers, general partners, employees, representatives, and agents and Plaintiff Counsel.

21.   "Releases" means the releases set forth in Paragraph D below.

22.   "Settlement Hearing" means the hearing at which the Court will determine whether to enter the Final Judgment and Order of Dismissal.

23.   "Summary Notice" means the Summary Notice of Settlement of Shareholder Derivative Litigation, substantially in the form attached hereto as Exhibit C.

24.   "Unknown Claims" means any Released Claims which the Released Parties do not know or suspect exist in their favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into or object to the Settlement.  With respect to any and all Released Claims, and although the Settlement provides for a specific release of the Released Parties, the Parties stipulate and agree that, upon the Effective Date, the Released Parties shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, waived the provisions, rights and benefits of California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Released Parties shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, waived any and all provisions, rights and benefits conferred by any law of any jurisdiction, state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.  Any Released Party may

hereafter discover facts in addition to or different from those which he, she, they or it now knows or believes to be true with respect to the Released Claims but, upon the Court's entry of the Final Judgment and Order of Dismissal, the Released Parties shall be deemed to have fully, finally and forever settled and released any and all Released Claims known or unknown without regard to the subsequent discovery or existence of such different or additional facts.  The Released Parties shall be deemed by operation of the Final Judgment and Order of Dismissal to have acknowledged that the foregoing waivers were separately bargained for and are key elements of the Settlement of which this release is a part.

### B.    Settlement Terms

In consideration of the full settlement, satisfaction, compromise and release of the Released Claims, the Parties have agreed to the following:

1.    The Monetary Consideration of $79.5 million shall be paid by the Insurers on behalf of the Individual Defendants to Goldman Sachs within thirty (30) calendar days of the Effective Date, and shall be used (subject to payment of Plaintiff Counsel's attorneys' fees and expenses, as set forth *infra* at Paragraph G) solely for funding Goldman Sachs' compliance activities, including but not limited to funding the compliance measures referenced in this Section.

2.    As part of this Settlement, and to specifically address Plaintiff's goal that the Company has adequate compliance measures addressing the issues raised by the Complaint, Goldman Sachs has agreed to adopt and/or continue the following compliance measures.  Unless otherwise indicated, and subject to changes in applicable laws or regulations, the following measures shall remain in effect for a period of three years from the Final Date.

a.    <u>Extension of the Corporate Compliance Program Provisions.</u>  As set forth in Attachment C to the DPA, for a period of three years, expiring on October 22, 2023, the

Company agreed to enhance its internal controls and compliance programs to, among other things, maintain:  (i) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records and accounts; and (ii) a rigorous anti-corruption compliance program.   A special committee of the Board of Directors, consisting of the Lead Director and the Chairs of each of the Audit, Risk, Public Responsibilities and Compensation Committees of the Board, continues to oversee and review the remediation efforts arising out of 1MDB.  As part of this Settlement, Goldman Sachs has agreed to extend the Corporate Compliance Program provisions of Attachment C of the DPA for a period of one year following the expiration of the DPA on October 22, 2023.

        b.    <u>Enhancements to Authority of the Chief Compliance Officer ("CCO").</u>  The Company's CCO shall report to the Board (or the Audit Committee of the Board), on a periodic basis (but at least quarterly), and such report shall be prepared at the direction of the CCO and include, among other things:  (i) the status of the Company's Compliance Program; (ii) pending internal and external investigations and the disposition of matters reported via the anonymous hotline (as described below); and (iii) other matters the CCO reasonably determines may be relevant to aspirations reflected in the Company's Code of Business Conduct and Ethics. The CCO shall also have the necessary resources to hire a dedicated internal investigatory staff and shall be empowered to hire external investigators where, in the CCO's discretion, it is appropriate to do so.

        c.    <u>Maintenance of an Anonymous Hotline with Reporting to the CCO.</u> The Company shall maintain an anonymous hotline that employees may use to report matters to the CCO, which will be managed by the Company's Compliance Department.  The Company will implement a reasonable process by which the CCO, and/or staff designated by the CCO, will

investigate an initial claim or complaint made to the hotline and follow up as the CCO (or his, her or their designee) deems reasonably appropriate.

d.   <u>Maintain an External Monitoring Channel.</u>   The Company shall designate an outside party to monitor public media and industry reports that may raise compliance concerns involving Goldman Sachs, which outside party shall report any such issues of to the CCO on a periodic basis, who, insofar as the issue is not already being reviewed or investigated, shall have discretion to determine how the matter should be reviewed or investigated.

3.   The Parties acknowledge that, after the commencement of this Action and prior to the Parties' acceptance of the Mediators' Proposal, Goldman Sachs implemented certain governance initiatives and enhancements pertaining to the Foreign Corrupt Practices Act ("<u>FCPA</u>") and other applicable anti-corruption laws, including those described below.

a.   <u>Remedial Measures.</u>   Following the 1MDB bond offerings and continuing after the commencement of this Action, and as reflected in the DPA, Goldman Sachs implemented certain remedial measures, including:  (i) heightened controls and procedures relating to electronic surveillance, due diligence on proposed transactions and/or clients, and the use of third-party intermediaries;  and (ii) anti-corruption training for management and relevant employees.  A summary of the Company's post-1MDB controls enhancements are electronically available on the Company's website, see https://www.goldmansachs.com/media-relations/press-releases/current/pdfs/gs-2020-10-22.pdf, dated October 2020.

b.   <u>Enhancements to Corporate Compliance Program.</u>   See Section B(2)(a), *supra*.

c.   <u>Clawbacks, Forfeitures, and Compensation Reductions.</u>  The Board announced in October 2020 compensation actions against several current and former officers and

other employees, including approximately $174 million in clawbacks, forfeitures and compensation reductions, in light of its acknowledgement of the Company's institutional failures related to the 1MBD transactions.

        d.     Plaintiff and Goldman Sachs acknowledge that the above remedial corporate governance reforms were generally requested as part of the Prayer for Relief in Plaintiff's Complaint.

     **C.**    **Preliminary Approval and Notice Procedure**

       1.     Within two (2) business days of execution of this Stipulation in full, Plaintiff shall submit this Stipulation, together with its related documents, to the Court and request entry of the Preliminary Approval Order, substantially in the form of Exhibit A attached hereto, seeking, *inter alia*; (i) preliminary approval of the Settlement set forth herein; (ii) approval for the publication of the Notice and Summary Notice, substantially in the forms of Exhibits B and C; (iii) the setting of a date for the Settlement Hearing; (iv) the setting of dates for the receipt of objections and the filing of papers in support of a motion for final approval of the Settlement; (v) a stay of all proceedings in the Action except as may be necessary to implement the Settlement; and (vi) such other and further relief as the Court deems just and proper.

       2.     Notice of the proposed Settlement shall be provided to Goldman Sachs shareholders in the following manner (or in such other manner directed by the Court):  (i) Goldman Sachs publication of the Summary Notice, substantially in the form of Exhibit C hereto in the national and local editions of the *Wall Street Journal* and *New York Times*, and via a national wire service; (ii) Goldman Sachs' publication of a Current Report on Form 8-K with the Securities and Exchange Commission; (iii) Goldman Sachs causing the Stipulation and the Notice, substantially in the form of Exhibit B hereto, to be made electronically available on an Internet page created by

Goldman Sachs that will be accessible via a link on the "Investor Relations" page of http://www.goldmansachs.com, the address of which shall be contained in the Notice and Summary Notice; and (iv) Plaintiff Counsel posting the Stipulation and Notice on its firm's website.

        3.     Goldman Sachs shall bear all Notice Costs related to promulgating notice in the manner set forth in Paragraph C(2)(i) – (iii), and in no event shall Plaintiff or Plaintiff Counsel be responsible for any such costs or expenses.   Plaintiff Counsel, however, shall bear the costs and expenses related to promulgating notice in the manner set forth in Paragraph C(2)(iv) above.

        **D.**      **Releases**

        1.     As of the Effective Date, the Released Plaintiff Parties, Goldman Sachs and each of Goldman Sachs shareholders to the extent he, she, they or it are acting or purporting to act derivatively on behalf of Goldman Sachs shall be deemed to have fully, finally and forever released, settled and discharged the Released Defendant Parties from and with respect to every one of the Released Plaintiff Claims on the terms and conditions set forth herein, and shall thereupon be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute, whether directly or indirectly, any Released Plaintiff Claims against any of the Released Defendant Parties.

        2.     As of the Effective Date, Defendants shall be deemed to have fully, finally and forever released, settled and discharged the Released Plaintiff Parties from and with respect to every one of the Released Defendant Claims, and shall thereupon be forever barred and enjoined from commencing, instituting, or prosecuting, whether directly or indirectly, any of the Released Defendant Claims against any of the Released Plaintiff Parties.

3.      As of the Effective Date, the Parties shall be deemed bound by the Stipulation and the Final Judgment and Order of Dismissal.  The Final Judgment and Order of Dismissal including, without limitation, the release of all Released Claims against all Released Parties, shall have res judicata, collateral estoppel, and all other preclusive effects in respect of all pending and future lawsuits, arbitrations, suits, actions, demands or proceedings involving any of the Released Plaintiff Parties or the Released Defendant Parties.

**E.      Stay of Proceedings**

The Parties agree to seek a stay of proceedings in the Action (or any other derivative action that has been or may be filed related to the Action or the subject matter thereof), and not to initiate or cause to be initiated any proceedings other than those related to the Settlement itself.

**F.      Dismissal with Prejudice**

If the Preliminary Approval Order is granted by the Court, the Parties shall jointly request as soon as reasonably practicable, following the provision of the notices provided for in Paragraph C, that the Court enter the Final Judgment and Order of Dismissal in the Action substantially in the form attached hereto as Exhibit D.  If the Final Judgment and Order of Dismissal is entered by the Court, the Parties also shall jointly and promptly request dismissal, with prejudice, of any other derivative action that has been or may be filed that relates to the Action or the subject matter thereof.

**G.      Attorneys' Fees and Expenses**

1.      Plaintiff and Plaintiff Counsel intends to apply to the Court for attorneys' fees and reimbursement of expenses incurred in connection with the initiation and prosecution of this Action pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and/or any other applicable

rules or laws.  In particular, as part of the Settlement Hearing, Plaintiff Counsel intends to apply to the Court for an award of fees and expenses, not to exceed 25% of the Monetary Consideration, in connection with the Action (the "Fee Application").  The Fee Application may include a service award for Plaintiff, which will reimburse Plaintiff for its time, efforts and expenses in furtherance of the Action, and which will be paid from Plaintiff Counsel's attorneys' fees.

2.     Goldman Sachs and the Individual Defendants have agreed not to object to or otherwise challenge any reasonable attorneys' fee and expense request made by Plaintiff or Plaintiff Counsel, so long as Plaintiff or Plaintiff Counsel does not apply to the Court for an award of fees and expenses that exceeds 25% of the Monetary Consideration.  Such matters are not the subject of any agreement between Plaintiff and Defendants other than as set forth in this Stipulation.

3.     Any attorneys' fees and expenses awarded by the Court shall be paid by Goldman Sachs to Plaintiff Counsel within ten (10) business days after Goldman Sachs' receipt of the Monetary Consideration, notwithstanding the existence of any timely filed objections to the award, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiff Counsel's obligation to make appropriate refunds or repayments if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees or litigation expenses is reduced or reversed, and such order reducing or reversing the award has become final.  Plaintiff Counsel shall make the appropriate refund or repayment in full to Goldman Sachs no later than thirty (30) business days after: (i) receiving from Defendants Counsel notice of the termination of the Settlement; or (ii) any order reducing or reversing the award of attorneys' fees or litigation expenses has become final.  An award of attorneys' fees or litigation expenses is

not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. Neither Plaintiff nor Plaintiff Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees or litigation expenses.  Except as expressly provided herein, Plaintiff and Plaintiff Counsel shall bear their own fees, costs and expenses and no Defendant shall assert any claim for expenses, costs and fees against Plaintiff or Plaintiff Counsel.

4.      Neither the resolution of, nor any ruling regarding, any application for any award of attorneys' fees and expenses shall be a precondition of the Settlement or entry of the Final Judgment and Order of Dismissal in accordance with the terms of this Stipulation.  The Court may consider and rule upon the fairness, reasonableness and adequacy of the Settlement independently of any fee award, and any failure of the Court to approve any fee award, in whole or in part, shall have no impact on the effectiveness of the Settlement.  Notwithstanding anything in this Stipulation to the contrary, the effectiveness of the Releases and the other obligations of the Parties under the Settlement (except with respect to the payment of attorneys' fees and expenses) shall not be conditioned upon or subject to the resolution of any appeal from any order, if such appeal relates solely to the issue of any award of attorneys' fees or the reimbursement of expenses.

5.      The Parties agree that the Court shall have and retain exclusive and continuing jurisdiction in the event of any claim, demand or other matter by or on behalf of any shareholders of the Company for attorneys' fees or costs in connection with the prosecution of any claim, demand or other matter related to or in any way involving any of the Released Claims.

**H.     Cooperation**

1.      The Parties and their respective counsel agree to cooperate fully with one another in seeking the Court's approval of the Settlement and to use their best efforts to effect the

consummation of this Stipulation and the Settlement (including, but not limited to, resolving any objections raised with respect to the Settlement).

2.      Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

**I.      No Admission of Wrongdoing**

1.      The Settlement, whether or not approved by the Court, shall not constitute an admission of liability by any of the Defendants in respect of the Claims asserted against them in the Action.  Neither this Stipulation, nor any negotiations, proceedings or agreements relating to it shall be offered or received against any Party in any other civil, criminal or administrative action, proceeding or forum as evidence of, or construed as or deemed to be evidence of, or in any way referred to for any other reason as against any of the Parties as a presumption, concession or admission:  (i) by Plaintiff of any infirmity in the Claims asserted in the Action; (ii) by any Individual Defendant with respect to his or her liability, negligence or fault in respect of the Claims that have been or could have been asserted in the Action; or (iii) that the consideration to be given hereunder represents the consideration which could be or would have been recovered at trial; *provided, however,* that nothing contained in this paragraph shall apply to references to this Stipulation or accompanying documents in any action, proceeding or forum to effectuate the provisions of this Stipulation

2.      The Settlement (including the Releases) shall be null and void and of no force and effect, unless otherwise agreed by the Parties herein, if:  (i) the Court does not enter the Final Judgment and Order of Dismissal; (ii) the Action is not dismissed with prejudice; (iii) the Parties do not obtain final approval of the Settlement for any reason; or (iv) the Effective Date and/or the Final Date does not come to pass.

3.      In the event this Stipulation is deemed null and void, the Parties shall be deemed to be in the respective positions they were in prior to the execution of this Stipulation and Goldman Sachs shall return to the Insurers any payment made to Goldman Sachs pursuant to Paragraph B(1) herein.  All negotiations, proceedings, documents prepared and statements made in connection with this Stipulation shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by a Party of any act, matter, or proposition and shall not be used in any manner for any purpose (other than to enforce the terms remaining in effect) in any subsequent proceeding in the Action or in any other suit, action or proceeding.  The terms and provisions of this Stipulation shall have no further force and effect with respect to the Parties and shall not be used in any other action, proceeding or forum for any purpose, and any judgment or orders entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

**J.      Confidentiality**

All agreements made by the Parties and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

**K.      No Waiver**

1.      Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation by such other Party.

2.      No waiver, express or implied, by any Party of any breach or default in the performance by another Party of its obligations under this Stipulation shall be deemed or construed

to be a waiver of any other breach, whether prior, subsequent or contemporaneous, under this Stipulation.

**L.      Authority**

This Stipulation will be executed by the Parties' counsel, each of whom represents and warrants that they have been duly authorized and empowered to execute this Stipulation on behalf of such Party, and that it shall be binding on such Party in accordance with its terms.

**M.      Successors and Assigns**

This Stipulation is, and shall be, binding upon, and inure to the benefit of, the Parties and their respective agents, executors, administrators, heirs, successors and assigns; provided, however, that no Party shall assign or delegate its rights or responsibilities under this Stipulation without the prior written consent of the other Parties.

**N.      Governing Law and Forum**

1.      This Stipulation, and any dispute arising out of or relating in any way to this Stipulation, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict-of-laws principles.

2.      Each of the Parties:  (i) irrevocably submits to the personal jurisdiction of the United States District Court for the Southern District of New York, as well as to the jurisdiction of all courts to which an appeal may be taken from such court, in any suit, action or proceeding arising out of or relating to this Stipulation and/or the Settlement; and (ii) agrees that any such suit, action or proceeding shall be brought, heard and determined exclusively in this Court (provided that, in the event that subject-matter jurisdiction is unavailable in the Court, then all such claims shall be brought, heard and determined exclusively in any state court sitting in New York, New York having subject-matter jurisdiction).

3.      Each of the Parties waives any defense of inconvenient forum to the maintenance of any suit, action or proceeding brought in accordance with this section.

4.      Each of the Parties further agrees to waive any bond, surety or other security that might be required of any other Party with respect to any such suit, action or proceeding, including an appeal thereof; such waiver is not applicable to any bond, surety or other security that might be required of a nonparty objector to the Final Judgment and Order of Dismissal.

5.      Each of the Parties further consents and agrees that process in any such suit, action, proceeding or forum may be served on such Party by serving the Party's counsel of record in this Action.

**O.      Representations and Warranties**

1.      Plaintiff Counsel represents and warrants, on behalf of its client, that:  (i) its client has been a continuous shareholder of Goldman Sachs at all times relevant to the allegations in the Complaint and through the date of this Stipulation; and (ii) none of the Released Plaintiff Claims has been assigned, encumbered or in any manner transferred in whole or in part, and that they and their respective clients will not attempt to assign, encumber or in any manner transfer in whole or in part any of the Released Plaintiff Claims.

2.       Each Party represents and warrants that the Party has made such investigation of the facts pertaining to the Settlement provided for in this Stipulation, and all of the matters pertaining thereto, as the Party deems necessary and advisable.

**P.      Entire Agreement**

This Stipulation and the attached Exhibits constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior or contemporaneous oral or written agreements, understandings or representations among the Parties with respect to the subject matter

hereof.  All of the Exhibits hereto are incorporated by reference as if set forth herein verbatim, and the terms of all Exhibits are expressly made part of this Stipulation.

       **Q.**    **Interpretation**

       1.    This Stipulation will be deemed to have been mutually prepared by the Parties and will not be construed against any of them by reason of authorship.

       2.    This Stipulation and Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York.

       3.    The terms and provisions of this Stipulation are intended solely for the benefit of the Parties, and their respective successors and permitted assigns, and it is not the intention of the Parties to confer third-party beneficiary rights or remedies upon any other Person, except with respect to:  (i) any potential award of attorneys' fees and expenses to be paid to Plaintiff or Plaintiff Counsel; and (ii) the Released Parties who are not signatories hereto, and who shall be third-party beneficiaries under this Stipulation entitled to enforce it in accordance with its terms.

       **R.**    **Amendments**

       This Stipulation may not be amended, changed, waived, discharged or terminated (except as explicitly provided herein), in whole or in part, except by an instrument in writing signed by the Parties to this Stipulation.  Any such written instrument signed by the Parties shall be effective upon approval of the Court, without further notice to Goldman Sachs shareholders, unless the Court requires such notice.

       **S.**    **Counterparts**

       This Stipulation may be executed electronically in any number of counterparts and by each of the different Parties on several counterparts, each of which when executed shall be deemed to be an original.  This Stipulation will become effective when each of the Parties has signed this

Stipulation and delivered to the other Parties.  The executed signature page(s) may be joined together and attached and will constitute one and the same instrument.

**IN WITNESS WHEREOF,** the Parties have caused this Stipulation, dated as of May 13, 2022, to be executed by their duly authorized attorneys.

**SAXENA WHITE P.A.**
Steven B. Singer
10 Bank Street, 8th Floor
White Plains, NY 10606
Phone: (914) 437-8551
Fax: (888) 631-3611
ssinger@saxenawhite.com

Maya Saxena
Joseph E. White, III
Lester R. Hooker
Adam D. Warden
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Phone: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
awarden@saxenawhite.com

*Counsel for Plaintiff Fulton County Employees' Retirement System*

**WINSTON & STRAWN LLP**
Robert Y. Sperling (*pro hac vice*)
Linda T. Coberly (*pro hac vice*)
Seth C. Farber
George E. Mastoris
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
rsperling@winston.com
lcoberly@winston.com
sfarber@winston.com
gmastoris@winston.com

*Counsel for Defendants Lloyd Blankfein, David M. Solomon, M. Michele Burns, Mark A. Flaherty, William W. George, James A. Johnson, Ellen J. Kullman, Lakshmi N. Mittal, Adebayo O. Ogunlesi, Peter Oppenheimer, David A. Viniar, Mark O. Winkelman, and The Goldman Sachs Group, Inc.*